**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

MICHAEL A.,

Plaintiff,

v. Civ. No. 25-372 MIS/GJF

FRANK BISIGNANO, *Commissioner of the Social Security Administration*,

Defendant.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION ON PLAINTIFF'S MOTION TO REVERSE AND REMAND**

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand (Dkt. No. 16) ("Motion"), in which he challenges the determination of the Commissioner of the Social Security Administration ("the Commissioner") that Plaintiff is not entitled to disability insurance benefits ("DIB") under Title II of the Social Security Act or supplemental security income ("SSI") under Title XVI of the Act. The Motion is fully briefed. *See* Dkt. Nos. 18 (response), 20 (reply). The Court has thoroughly reviewed the administrative record, the briefing, and the relevant law. For the reasons set forth below, the Court recommends the Motion be **DENIED** and this case dismissed with prejudice.[1]

## I. BACKGROUND

Plaintiff is 54 years old, has a master's degree in architecture, and prior work experience as an architect. Administrative Record ("AR") at 41–42, 67. He filed a Title II application for a period of disability and DIB as well as a Title XVI application for SSI. AR at 212–37. In those applications, he alleged that he became disabled on March 14, 2020, due to a heart murmur, neck

---

[1] The undersigned files this Proposed Findings and Recommended Disposition ("PFRD") pursuant to the presiding judge's April 18, 2025 Order of Reference. Dkt. No. 9.

pain with soreness, arm and hand pain, middle back pain, leg and foot pain, headaches, migraines, anxiety, and depression. AR at 212–37, 277. His application was denied at the initial level (AR at 123–26, 127–30) and upon reconsideration (AR at 134–36, 137–39). He requested a hearing (AR at 140–45), which ALJ David R. Wurm conducted on September 16, 2024 (*see* AR at 37–61). At the hearing, Plaintiff was represented by attorney Gary Martone and both he and vocational expert Thomas Greiner testified. AR at 37–61.

On October 3, 2024, the ALJ issued his decision, finding that Plaintiff was not disabled under the relevant sections of the Social Security Act. AR at 17–27. Plaintiff requested Appeals Council review of the ALJ's unfavorable decision (AR at 7–10), but the Council denied review (AR at 1), which made the ALJ's decision the final decision of the Commissioner. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). Plaintiff then timely filed his Complaint in this case seeking review of the Commissioner's decision. Dkt. No. 1.

## II. STANDARD OF REVIEW

### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To evaluate claims for benefits, the SSA uses a five-step sequential evaluation process. *Barnhart v. Thomas*, 540 U.S. 20, 24–25 (2003) (citation omitted). The first four steps require the claimant to show that (1) "he is not presently engaged in substantial gainful activity," (2) "he has a medically severe impairment or combination of impairments," and either (3) the impairment is equivalent to a listed impairment or (4) "the impairment or combination of impairments prevents him from performing his past work."

*Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The claimant bears the burden at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 & n.5 (1987); *Grogan*, 399 F.3d at 1261; *Williams*, 844 F.2d at 755–51, 751 n.2. If he reaches step five, however, the burden shifts to the Commissioner to show that the claimant retains sufficient capacity "to perform other work in the national economy in view of his age, education, and work experience." *Yuckert*, 482 U.S. at 142, 146 n.5.

**B. Substantial Evidence**

Judicial review of the ALJ's five-step analysis and ultimate decision is both legal and factual. *See, e.g.*, *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) ("The standard of review in a social security appeal is whether the correct legal standards were applied and whether the decision is supported by substantial evidence."). If the ALJ applied the correct legal standards and supported his findings with substantial evidence, the Commissioner's decision stands. *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004).

In determining whether the ALJ applied the correct legal standards, the Court evaluates whether the ALJ "followed the specific rules of law" required for "weighing particular types of evidence in disability cases." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The Court may reverse or remand if the ALJ failed to "apply correct legal standards" or "show . . . [he] has done so." *Hamlin*, 365 F.3d at 1214 (citations and quotations omitted).

The Commissioner's factual findings, on the other hand, are presumed conclusive unless "[un]supported by substantial evidence." 42 U.S.C. § 405(g). This standard requires "look[ing] to an existing administrative record and ask[ing] whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (alteration in

original) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "[T]he threshold for such evidentiary sufficiency is not high. Substantial evidence, [the Supreme] Court has said, is more than a mere scintilla." *Id.* at 103 (quotation and citation omitted). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

Under this "substantial evidence" standard, a court cannot convert its meticulous review of the full record into "reweigh[ing of] the evidence nor substitut[ing] [the court's] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (quotation omitted); *Hamlin*, 365 F.3d at 1214. Indeed, a court is to "review only the sufficiency of the evidence, not its weight." *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (emphasis in original). Thus, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax*, 489 F.3d at 1084 (quotation omitted). Consequently, a court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Id.* (quotation and brackets omitted).

## III. PLAINTIFF'S CONTENTIONS

Plaintiff contends the ALJ: (1) failed to properly assess his migraine headaches, and (2) "[i]nexplicably" determined that his "circulatory [impairments] and leg swelling support[ed] the need to avoid environmental hazards and temperature extremes" instead of leg elevation. Dkt. No. 16 at 9–14.

## IV. ALJ'S DECISION AND FINDINGS

### A. Steps One Through Three

At step one, the ALJ found that Plaintiff had "not engage[d] in substantial gainful activity

since March 14, 2020, the alleged onset date." AR at 19 (citing 20 C.F.R. §§ 404.1571, 416.971). At step two, he found that Plaintiff had four severe impairments: "degenerative disc disease; hypertension; congestive heart failure with venous stasis of bilateral lower extremities; and iron deficiency anemia." AR at 19 (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)). In addition, he determined that Plaintiff had five *non-severe* impairments: migraines, myopia, astigmatism, anxiety, and major depressive disorder. AR at 20. At step three, he concluded that none of these impairments, individually or collectively, matched the severity of "listed impairments." AR at 21 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926).

**B. Steps Four and Five**

The ALJ found at step four that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with . . . the . . . evidence" in the record. AR at 23. He discussed, among other things, Plaintiff's medical records, his subjective complaints, his mother's third-party function report, the prior administrative findings of the non-examining state agency consultants, and the opinions of state agency consultative examiners. *See* AR at 20–25.

Also at step four, the ALJ determined that Plaintiff had the RFC to perform a range of light work[2] with the following limitations:

> [He can] occasionally climb ramps and stairs; never climb ladders or scaffolds; occasionally crouch or crawl; no exposure to heights or hazards like moving machinery; and, avoid exposure to extreme heat or cold.

AR at 22.

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 404.916(b).

The ALJ determined that Plaintiff had no past relevant work (AR at 25), but at step five, he found that given Plaintiff's "age, education, work experience, and [RFC], there [were] jobs that exist[ed] in significant numbers in the national economy that [Plaintiff could] perform," such as marker, ticket taker, and toll collector. AR at 25–26. Consequently, the ALJ found Plaintiff not disabled within the meaning of the Social Security Act. AR at 26–27.

## V. DISCUSSION

### A. ALJ did not commit reversible error in his consideration of Plaintiff's migraines.

Plaintiff first alleges that the ALJ failed to properly assess his migraines at steps two through four, culminating in his failure to properly account for his migraine impairment in the RFC assessment. Dkt. No. 16 at 9–12; Dkt. No. 20 at 3–7. The Commissioner, in contrast, insists that the ALJ reasonably determined that Plaintiff's complaints about migraines were not supported by the medical record. Dkt. No. 18 at 4–9.

At step two, the ALJ must consider whether an impairment is severe, bearing in mind that an impairment (or combination of impairments) is *not* severe if it does not significantly limit a claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c), 404.1522, 416.922. Here, the ALJ characterized Plaintiff's migraines as a *non-severe* impairment. AR at 20. But to the extent Plaintiff challenges this finding, any such error was harmless, given that the ALJ found that Plaintiff had *some* severe impairments and continued beyond step two of the sequential evaluation process. *See Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016); *Barrett v. Astrue*, 340 F. App'x 481, 484 (10th Cir. 2009) ("[O]nce an ALJ finds that a claimant has at least one severe impairment, he does not err in failing to designate other disorders as severe at step two, because at later steps the agency 'will consider the combined effect

of all of [claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.'").

Similarly, the ALJ's failure at step three to discuss any Listings relevant to a migraine or headache impairment was also harmless. After all, Plaintiff "has the burden . . . of demonstrating, through medical evidence, that his impairments 'meet *all* of the specified medical criteria' contained in a particular listing," *Riddle v. Halter*, 10 F. App'x 665, 667 (10th Cir. 2001) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990), *superseded by statute on other grounds as stated in Kennedy v. Colvin*, 738 F.3d 1172, 1174 (9th Cir. 2013)), and here he does not allege that his migraine impairment met or equaled any Listing. At most, he discusses SSR 19-4p, which describes Listing 11.02 (Epilepsy) as "the most closely analogous listed impairment for . . . a primary headache disorder" and explains that "[w]hile uncommon, a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing 11.02" and may therefore be found to medically equal the listing. SSR 19-4P, 2019 WL 4169635, at *7 (Aug. 26, 2019). But critically, Plaintiff stops short of arguing that his migraine impairment met or equaled Listing 11.02. *See* Dkt. No. 16 at 10–12.

Moreover, given the ALJ's finding that Plaintiff's migraine impairment caused no more than a *minimal* limitation in basic work activities, that impairment would not have satisfied Listing 11.02, and any error in failing to explicitly discuss it at step three was harmless. *See Roberts v. Colvin*, No. 1:13-cv-29-PMW, 2014 WL 949870, at *3 (D. Utah March 11, 2014) (finding that the ALJ's error at step three was harmless because the claimant failed to argue that his impairments met or equaled any particular listing and, thus, the claimant "failed to demonstrate how any such error prejudiced him"); *Drummond v. Astrue*, 895 F. Supp. 2d 1117, 1126 (D. Kan. 2012) ("Even assuming that . . . the ALJ failed to provide adequate analysis or explanation regarding his step

three finding and that the finding is unsupported, [the claimant] has not alleged that he was prejudiced by the error, because he does not say what Listing, if any, his condition meets or medically equals."); *Hanks v. Berryhill*, CIV 17-547-CG, 2018 WL 3913795, at *4 n.4 (W.D. Okla. Aug. 16, 2018) (reasoning that any error by the ALJ in failing to explicitly consider, at step three, whether a non-severe impairment met or equaled a Listing was harmless, "as the ALJ's step-two and RFC findings ma[d]e clear that no such Listing would have been found to be met or equaled").

Despite the harmlessness of alleged errors at steps two and three, Plaintiff insists that the ALJ committed his "most egregious errors" at step four, in the RFC assessment. Dkt. No. 16 at 12. To be sure, when assessing Plaintiff's RFC at step four, the ALJ was required to consider even non-severe impairments, like Plaintiff's migraines. *See* 20 C.F.R. §§ 404.1545, 416.945 (providing that an ALJ must consider *all* medically determinable impairments in formulating an RFC). The ALJ purported to do just this when he stated that "[t]he undersigned has considered all of the claimant's medically determinable impairments when assessing [his] residual functional capacity." AR at 21. Elsewhere, he set forth the applicable analytical standard with citations to the applicable regulatory provisions: "the undersigned must consider all of the claimant's impairments, including impairments that are not severe." AR at 19 (citing 20 C.F.R. §§ 404.1520(e), 404.1545, 416.920(e), 416.945; SSR 96-8p). Although the ALJ's discussion of Plaintiff's migraines begins and ends at step two, the Court takes the ALJ at his word that he did as he said and considered each of Plaintiff's *non-severe* impairments at later stages of his analysis, including when assessing Plaintiff's RFC. *See Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) ("[O]ur general practice, which we see no reason to depart from here, is to take a lower tribunal at its word when it declares that it has considered a matter.").

For his part, the Commissioner suggests that the environmental and temperature limitations that the ALJ included in Plaintiff's RFC were "a precaution for any migraines." Dkt. No. 18 at 4–5 (citing AR at 22). But this *post hoc* speculation lacks explicit support in the ALJ's discussion of Plaintiff's limitations. That is, the ALJ attributed the environmental and temperature limitations not to Plaintiff's migraines but to his "circulatory problems and leg swelling." AR at 24. The better view, when reading the ALJ's decision as a whole and given his step-two analysis of Plaintiff's migraines, is that the ALJ did *not* include additional limitations in Plaintiff's RFC to account for his migraines beyond those inherent in a limitation to light work. *See* AR at 20 ("the record is insufficient to show more than minimal limitation in the claimant's ability to perform basic work activities due to" his migraines and other non-severe impairments). With that understanding in mind, the Court examines the analysis the ALJ articulated with respect to Plaintiff's migraine impairment.

In support of his determination that migraines, myopia, and astigmatism were referenced in the record, the ALJ provided two citations. AR at 20. First, he cited the portion of the disability application in which Plaintiff listed headaches and migraines among the conditions that allegedly limited his ability to work. *See* AR at 20 (citing AR at 277). Second, he referred to treatment notes from Plaintiff's optometry visit in May 2024, in which he reported seasonal allergies, eye pain, headaches, and blurry vision from sinus pressure and in which the provider assessed "high myopia" and "regular astigmatism." AR at 663–65.

Also at step two, in conjunction with his finding that Plaintiff's migraines, myopia, and astigmatism were *non-severe* impairments, the ALJ stated that he "considered all symptoms and the extent to which these symptoms [could] reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929,

and SSR 16-3p." AR at 20. When he discussed that symptom evidence at step four, the ALJ explained that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms [were] *not entirely consistent* with the medical evidence and other evidence in the record." AR at 23 (emphasis added). In support, he chronicled the medical records during the relevant period, noting that Plaintiff reported complaints of lumbar pain, typically denied neck pain or tenderness, and denied focal motor or sensory deficits. AR at 23–24. Absent from the ALJ's discussion of Plaintiff's medical records, though, is any mention of migraines. *See* AR at 20. Significantly, Plaintiff's treatment records during the relevant period are likewise devoid of complaints of or treatment for migraines. Not only was the absence of migraine complaints relevant to the ALJ's analysis, so too were Plaintiff's activities as documented by his medical records and as discussed by the ALJ. AR at 20. Most notably, the ALJ observed that Plaintiff's treatment records from March 2023 reflect that he was "work[ing] long days chopping and collecting wood for income." AR at 24; *see also* AR at 602.

Finally, in evaluating Plaintiff's migraine impairment at step two, the ALJ stated that he "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927." AR at 20. Indeed, the ALJ discussed the prior administrative findings of two state agency non-examining consultants, Randal Reid, M.D. and Meghana Karande, M.D.,[3] who each found Plaintiff capable of light work with some postural limitations. *Compare* AR at 72, 98, *with* 20 C.F.R. §§ 404.1567(b), 404.967(b) *and* SSR 83-10 at *6 (Jan. 1, 1983). Under the revised regulations applicable at the time of Plaintiff's application for disability benefits, no specific

[3] Medical opinions from non-examining state agency consultants, like Drs. Reid and Karande, are classified as "prior administrative findings[,]" but the rules for weighing them are the same as for weighing medical opinions. *See Vigil v. Saul*, No. CV 20-632 CG, 2021 WL 2117184, at *5 (D.N.M. May 25, 2021) (citing 20 C.F.R. §§ 404.1531a, 404.1520c); *see also* 20 C.F.R. §§ 416.913a, 416.920c.

evidentiary weight or deference is given to prior administrative findings. *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, they are evaluated on equal footing using the factors enumerated in the regulations. *See* 20 C.F.R. §§ 404.1520c(c)(1)–(5), 416.920c(c)(1)–(5). Of the enumerated factors, "supportability" and "consistency" are the "most important," and an ALJ must explain how he considered these factors when assessing the prior administrative findings' persuasive value. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). As required by 20 C.F.R. §§ 404.1520c(b)(2) and 416.920c(b)(2), the ALJ specifically discussed the supportability and consistency of Drs. Reid and Karande's findings and ultimately determined that they were "partially persuasive." AR at 24–25.

In his supportability assessment, the ALJ determined that the consultants' findings were "supported by the record, which indicate[d] that the claimant [was] limited to a range of light work." AR at 24–25. The ALJ noted Drs. Reid and Karande's observations that Plaintiff "had been spending time in the woods working with logs and designing an alternative dwelling." AR at 25 (citing AR at 555–56). Implicit in this observation was the ALJ's assessment, like that of the consultants, that these reported activities suggested Plaintiff was not as limited as he claimed. Even so, in his consistency assessment, the ALJ explained that "the totality of evidence" supported "greater postural and environmental restrictions" than the state agency consultants found. AR at 25. The ALJ attributed these greater restrictions to Plaintiff's "back pain and circulatory impairments, which have impacted mainly his lower extremities." AR at 25.

For present purposes, it is significant that Drs. Reid and Karande summarized the complaints Plaintiff included in a June 29, 2022 Headache Questionnaire that he submitted in conjunction with his disability applications: "Caused by walking and lifting. Gets migraine and cluster in front and middle. Gets blurred vision and dizziness. Gets weekly. Last about 1 hr when

using meds, when not using meds it's longer. Has to lie down in dark room." AR at 74, 100. After comparing Plaintiff's subjective complaints to the medical evidence, the consultants determined that his statements were "not fully consistent with the evidence of record." AR at 71–74, 98–100. As a result, neither consultant assessed any limitations attributable to migraines in his or her RFC. AR at 71–74, 98–100. The ALJ, in turn, largely accepted these findings, explaining that they were "supported by the record" insofar as they limited Plaintiff to a range of light work, except that additional limitations were warranted due to "back pain and circulatory impairments." AR at 24–25. Thus, the ALJ, too, implicitly rejected Plaintiff's complaints of disabling migraines. And notably, Plaintiff does not challenge the ALJ's treatment of the consultants' prior administrative findings.

Rather, to support his position that the ALJ failed to properly consider the work-related impact of his migraines, Plaintiff relies upon (1) the Headache Questionnaire the consultants discussed, (2) treatment notes from visits with a chiropractor in June and July 2019, and (3) a consultative examination from January 23, 2023. *See* Dkt. No. 16 at 12 (citing AR at 294 (Headache Questionnaire)); Dkt. No. 20 at 1 (citing AR at 291–94 (Headache Questionnaire), 379–81 (chiropractic records)), 5 (citing AR at 559 (consultative examination report)).

In his chiropractic records from the summer of 2019, Plaintiff recounted "an immediate headache" at the time of a June 12, 2019 automobile accident "due to hitting his head on the steering column," and he reported that he was "still experiencing" headaches at the time of his first chiropractic visit in June 2019. AR at 381–82. In his June 29, 2022 Headache Questionnaire, Plaintiff reported that his headaches/migraines began the day of his accident and caused symptoms of "blurred vision and dizziness." AR at 291. According to Plaintiff, a typical headache would last approximately an hour provided he took medication but longer if he didn't. AR at 294. He further

reported that he would lie down in a dark room or take a nap to alleviate a migraine. AR at 291. Finally, at his January 23, 2023 consultative examination, Plaintiff "reported having headaches and migraines since the accident," and he estimated that his headaches occurred twice per week and lasted thirty minutes and that his migraines occurred once per week and lasted one hour. AR at 559. Plaintiff indicated that he would rest in a dark, quiet room and take Tylenol to alleviate symptoms. AR at 559.

The Commissioner acknowledges that the record demonstrates that "Plaintiff made some complaints of having headaches related to a June 2019 automobile accident." Dkt. No. 18 at 5 (citing AR at 379 (Aug. 2019 chiropractic records), 381 (June 2019 chiropractic records)). He nevertheless insists that "the medical evidence does not support any claimed functional loss due to headaches or migraines." *Id*. Because the medical records after Plaintiff's March 14, 2020 alleged onset date reflect that Plaintiff either affirmatively denied experiencing headaches or failed to report headaches or migraines, the Commissioner infers that Plaintiff's headaches did not persist during the relevant period. *Id*. (citing AR at 416 (Apr. 2022 record reporting "no headache, focal weakness, or focal numbness"), 429 (Feb. 2022 record listing only "Chronic sciatica, Left" as his only chronic problem), 441 (July 2021 physical therapy screening notes denying headaches), 449 (June 2021 treatment record denying "syncope, focal weakness, headache, numbness [or] tingling"), 468 (April 2022 treatment record reporting "no headache, focal weakness, or focal numbness"), 527 (June 2022 treatment record denying "headache, dizziness, lightheadedness" and reporting "Chronic liver disease" as his only chronic problem)).

Having examined the records from the relevant period, the Court agrees that, apart from Plaintiff's subjective complaints in connection with his disability application and associated consultative examination, the record otherwise fails to document recurrent migraines or treatment

for migraines during the relevant period. Specifically, the only references to *continued* issues with headaches or migraines after the summer of 2019 come in Plaintiff's applications for DIB and SSI benefits, the Headache Questionnaire he submitted in connection with those applications, his consultative examination, and his testimony at the September 16, 2024 hearing before the ALJ. But critically, these references to migraines all come in the form of Plaintiff's subjective complaints and in the context of his disability application and associated examination and testimony. The ALJ explicitly concluded that Plaintiff's subjective complaints about his own symptoms were not an accurate reflection of his functional abilities (*see* AR at 23), and Plaintiff does not challenge this determination.

For his part, Plaintiff has not pointed to significantly probative evidence that the ALJ excluded without explanation or that would dictate additional limitations were warranted in the RFC to account for Plaintiff's migraines. Moreover, the Court can follow the ALJ's reasoning, brief though it was, regarding Plaintiff's migraines and is satisfied that he followed the applicable regulations in assessing Plaintiff's RFC. Having examined the ALJ's decision and the record, the Court concludes that the ALJ properly considered Plaintiff's migraines in assessing his RFC. *See Barrett,* 340 F. App'x at 485 (finding no reversible error where the ALJ concluded that the claimant's mental impairments were non-severe and therefore included no mental limitation in the RFC and also "indicated that he had . . . considered the entire record and all of [the] claimant's symptoms to the extent . . . they were reasonably consistent with the evidence, including the objective medical evidence"). Although Plaintiff faults the ALJ for not providing more substantive discussion of his migraines, there was simply very little, if anything, to discuss in terms of medical evidence of that impairment.

**B. ALJ did not commit reversible error by including in the RFC environmental and temperature limitations but omitting a requirement that Plaintiff elevate his legs.**

Plaintiff next contends that the ALJ erred by including limitations in his RFC that limited his exposure to hazards, such as heights and moving machinery, as well as exposure to extreme heat or cold but by *not including* limitations requiring the elevation of his feet. Dkt. No. 16 at 13–14. As Plaintiff puts it, "[t]here is no logical bridge between leg swelling and environmental hazards or temperature extremes, but there *is* a connection between [Plaintiff's] leg swelling and his need to elevate his feet." *Id*. In support of his contention that this alleged error was harmful, Plaintiff notes that the vocational expert witness testified that leg elevation would constitute a "special accommodation which removes it out of competitive labor." *Id*. at 14 (citing AR at 61).

The Commissioner, on the other hand, insists that the ALJ reasonably found that Plaintiff's leg swelling was well-controlled and did not require additional workplace restrictions beyond those included in the RFC. Dkt. No. 18 at 9–10. To the extent Plaintiff suggests that feet elevation should have been included in the RFC, the Commissioner maintains that the medical evidence does not support such a limitation. *Id*. at 10. Relatedly, the Commissioner contends that the limitations the ALJ *did* include to account for Plaintiff's circulatory problems and leg swelling find support in the record and are "obvious[ly]" connected to the effects of those impairments. *Id*.

At step two, the ALJ characterized Plaintiff's "congestive heart failure with venous stasis of the bilateral lower extremities" as a severe impairment. AR at 19. Next, explicitly examining the criteria of Listing 4.02 (Chronic Heart Failure) at step three, the ALJ concluded that "there [was] insufficient evidence in the record that demonstrate[d] th[at] criteria[,]" and, thus, he determined that Plaintiff's heart condition with venous stasis failed to meet or equal a Listing. AR at 19. At step four, the ALJ both discussed Plaintiff's venous stasis impairment and included limitations in the RFC to account for the effects of that impairment. *See* AR at 22–25.

At the outset of his RFC assessment, the ALJ acknowledged Plaintiff's complaints that his heart and circulatory problems (together with pain in his back, neck, arms, and legs) limit his ability to "lift, bend, stand, reach, walk, sit, climb stairs, complete tasks, and concentrate" and necessitate the use of a cane. AR at 23 (citing AR at 327). The ALJ determined that Plaintiff's complaints were "not entirely consistent" with the evidence, however. AR at 23. Although not explicitly discussed by the ALJ, Plaintiff testified at the hearing that his lower extremities "tend to flare" especially when it is cold and require him to "need a support – a secondary support," or a cane. AR at 47–49. Plaintiff also testified that in addition to his compression stockings, which improved his blood flow and alleviated pain, he also elevates his legs every morning when he wakes up and in the evening before bed. AR at 48, 51–52.

Turning to the medical evidence, the ALJ observed that, in June 2022, Plaintiff "exhibited swelling of the bilateral ankles and feet but had . . . no gross motor deficits" and, the following month, "exhibited a heart murmur consistent with inefective [sic] endocarditis." AR at 24 (citing AR at 528–29, 540–41, 545, 549). Next, the ALJ noted that "[t]reatment records from October of 2022" showed Plaintiff "was being treated for left atrial enlargement, moderate to severe" and "had been spending time in the woods working with logs and designing an alternative dwelling." AR at 24 (citing AR at 555–56). Similarly, the ALJ observed that "[t]reatment records from March of 2023 noted that [Plaintiff] was a wood hauler and 'works long days chopping and collecting wood for income,'" that "an examination revealed bilateral edema below the patella and erythema," and that "compression stockings were issued." AR at 24 (citing AR at 601–02, 604, 614, 619). Finally, the ALJ relied on notations from July 2023 treatment records, which reported that Plaintiff's compression stockings had "really helped a lot" and that, upon examination, he had "no pain at either foot or ankle." AR at 24 (citing AR at 645).

In his assessment of the relevant medical opinions of the state agency medical consultants, the ALJ explained that the medical evidence was "more consistent with *greater* postural and environmental restrictions based on [Plaintiff's] back pain and circulatory impairments, which have impacted mainly his lower extremities." AR at 25 (emphasis added). At the same time, the ALJ emphasized Plaintiff's reports of chopping and hauling wood and improvement in the pain and swelling of his lower extremities following consistent use of compression stockings. AR at 25. In the ALJ's view, the record supported a finding that Plaintiff was capable of performing light work but with no climbing of ladders or scaffolds and only occasionally crouching and crawling.[4] AR at 24. The ALJ further found that Plaintiff's "history of circulatory problems and leg swelling support[ed] the need to avoid environmental hazards and temperature extremes." AR at 24.

Taking issue with the limitations the ALJ included to account for his venous stasis, Plaintiff points to an April 2023 treatment record, which includes notations indicating that a podiatrist fitted Plaintiff for compression stockings, discussed with him the need for compression therapy for his lower legs, and explained that he "will also elevate[ his] legs throughout the day." AR at 619. The ALJ discussed this record in his summary of Plaintiff's medical evidence, though he did not explicitly mention the reference to leg elevation. *See* AR at 24 (citing AR at 619). Notably, though, the ALJ's discussion of subsequent treatment records reveals significant improvement in the pain and swelling in Plaintiff's lower extremities, which was attributed to his consistent use of

[4] The ALJ included in Plaintiff's RFC additional limitations, beyond those found by the consultants, to only *occasionally* climbing ramps and stairs, *never* climbing ladders or scaffolds, only *occasionally* crouching, and having no exposure to heights or hazards, such as moving machinery, or to extreme heat or cold. *Compare* AR at 72, 98, 111 (consultants limiting Plaintiff to light work and noting that he could "*frequently* climb ramps and stairs; *occasionally* climb ladders, ropes, or scaffolds; frequently kneel and crouch; and occasionally crawl"), *with* AR at 22 (ALJ limiting Plaintiff to light work except that he could "*occasionally* climb ramps and stairs; *never* climb ladders or scaffolds; *occasionally* crouch or crawl") (emphasis added).

compression stockings, not necessarily to leg elevation. AR at 24 (citing AR at 645). Moreover, although Plaintiff testified at the hearing that he soaked his feet and elevated his legs daily, he specified that he elevated his feet only twice per day: once upon waking and once before bed. AR at 51–52.

Viewing the record as a whole, and given the ALJ's discussion of Plaintiff's July 2023 treatment records, which reported significant improvement in his swelling and pain as a result of his compression stocking use, the Court is unconvinced that the ALJ erred by omitting a requirement in the RFC that Plaintiff elevate his feet while at work. Despite omitting any discussion of feet elevation from his RFC assessment, the ALJ was clear that "a finding that [Plaintiff] remains capable of performing light work is supported by notations of improved walking ability with physical therapy as well as improved swelling of the lower extremities with compression stockings." AR at 24.

Although Plaintiff insists that there is "no logical bridge" between his leg swelling and the limitations the ALJ imposed for environmental hazards or temperature extremes, the Court disagrees. The ALJ explicitly linked these limitations to the venous stasis of Plaintiff's lower extremities, explaining that his "history of circulatory problems and leg swelling support the need to avoid environmental hazards and temperature extremes." AR at 24. And significantly, the record supports the connection the ALJ articulated. After all, Plaintiff reported that his lower extremities "tend to flare" when it is cold and that his leg swelling and pain cause him to "need a support – a secondary support." AR at 47–49; *see also* AR at 94 (noting that Plaintiff "presents w/ cane" at an April 5, 2023 podiatry consult), 48 (testifying that his podiatrist suggested a cane, in addition to Epsom salt and compression socks, and that he bought one and had been using it daily), 49 (testifying, "I can stand, but I can't stand and walk" because "the [lower extremity] pain will flare

up, so I need a support . . . ."). Although the ALJ did not explicitly discuss *all* the relevant testimony or medical evidence concerning temperature effects, issues with stabilization, and references to leg elevation, he was not required to discuss every piece of evidence so long as the record demonstrates that he considered it, as it does here. *See Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996).

Given Plaintiff's references to exacerbation of symptoms due to cold and to instability and the need for a cane – together with the ALJ's explicit finding that Plaintiff's circulatory problems and leg swelling support the need to avoid hazards and temperature extremes – the Court can follow the ALJ's reasoning in limiting Plaintiff to light work with additional postural limitations and avoiding heights, moving machinery, and temperature extremes. Put another way, the Court *disagrees* with Plaintiff's position that the ALJ "inexplicably" included environmental and temperature limitations in the RFC in lieu of leg elevation. Even if a requirement that Plaintiff elevate his legs during the day would have *also* been an acceptable RFC limitation, that alone does not render the RFC the product of legal error or unsupported by substantial evidence. *See Lax*, 489 F.3d at 1084.

## VI. CONCLUSION

In sum, the Court concludes that the ALJ applied the correct legal standards and that his decision is supported by substantial evidence. **IT IS THEREFORE RECOMMENDED** that the Commissioner's decision be **AFFIRMED**, Plaintiff's Motion to Reverse and Remand (Dkt. No. 16) be **DENIED**, and this case be **DISMISSED WITH PREJUDICE**.

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). Any request for an extension must be filed in writing no later than seven days from the date of this filing. **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed**.